## PEOPLE v HAMMACK

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—INDORSE-
   MENT—REASONS—STATUTES.

   A prosecutor is required to indorse on the information the names
   of all res gestae witnesses for two reasons: to allow the defend-
   ant to know who is to be called so that he may investigate and
   prepare for cross-examination, and to require that the prosecu-
   tor present the entire res gestae of the crime (MCLA 767.40).

2. RAPE—WITNESSES—RES GESTAE WITNESSES—ELEMENTS OF OF-
   FENSE—INTENT.

   Testimony by two prosecution witnesses regarding the conduct of
   a defendant eight or nine hours before he committed a rape
   was not res gestae testimony and was not necessary to make
   out any of the elements of the crime because intent is not an
   element of rape.

3. CRIMINAL LAW—DEFENSES—INSANITY.

   The insanity defense in Michigan is two-pronged: first, did the
   defendant know what he was doing and did he know whether it
   was right or wrong, and second, if he did have such knowledge,
   did he have the will power to resist the impulse to do the act.

4. WITNESSES—CRIMINAL LAW—INDORSEMENT—DEFENSES—INSANITY
   —RAPE—REBUTTAL WITNESSES—SUDDEN IMPULSE—COURSE OF
   CONDUCT.

   Testimony of two witnesses who were not formally indorsed was

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 58 Am Jur, Witnesses § 111.
  21 Am Jur 2d, Criminal Law § 328.
  41 Am Jur 2d, Indictment and Information §§ 56, 60.
[2] 21 Am Jur 2d, Criminal Law § 93.
[3] 21 Am Jur 2d, Criminal Law §§ 31–36, 52.
[6] 58 Am Jur, Witnesses § 847.
[7] 21 Am Jur 2d, Criminal Law §§ 48, 49.
  30 Am Jur 2d, Evidence §§ 497, 503.
[8] 58 Am Jur, Witnesses § 834.
[9] 58 Am Jur, Witnesses § 844 *et seq.*
[10] 5 Am Jur 2d, Appeal and Error § 891.
[11] 21 Am Jur 2d, Criminal Law § 52.

properly admitted in a trial for rape where their testimony, about a defendant's attempts to pick them up eight or nine hours before the defendant picked up and subsequently raped the complainant, was offered in rebuttal to the defendant's insanity defense in an effort to show that the defendant's conduct was not a sudden impulse, but a continuing course of conduct.

5. WITNESSES—CRIMINAL LAW—REBUTTAL—DISCRETION—ABUSE OF DISCRETION.

A prosecutor may add witnesses to the information at any time by leave of the court, and the admissibility of rebuttal testimony also lies within the sound discretion of the trial court; the trial judge's decision will not be disturbed by the Court of Appeals unless clear abuse is shown.

6. CRIMINAL LAW—PRIOR CRIMINAL RECORD—WITNESSES—EXPERT WITNESSES—RECORD.

The prior criminal record of a defendant may be brought out by the prosecutor, on cross-examination of a defense psychiatrist, where the psychiatrist relied upon the record in forming his opinion.

7. CRIMINAL LAW—EVIDENCE—HEARSAY—DOCTORS' CERTIFICATES— MENTAL ILLNESS.

Doctors' certificates stating that a defendant was mentally ill, made some nine years before the offense was committed, are hearsay when offered to support an insanity defense; they are out-of-court statements introduced to prove the truth of the matter stated.

8. WITNESSES—EXPERT WITNESSES—TRIER OF FACT.

The trier of fact is free to reject the opinions of expert witnesses.

9. WITNESSES—EXPERT WITNESSES—BASIS FOR OPINION—CROSS-EXAMINATION—COURT RULES.

An expert witness may state his opinion and reasons therefor without first specifying data upon which it is based, but on cross-examination he may be required to specify such data; the reason for inquiring into the facts which the expert relied on to form his opinion is to test, not to establish, the basis for his opinion (GCR 1963, 605).

10. APPEAL AND ERROR—INSTRUCTIONS TO JURY—OBJECTION—COURT RULES.

The Court of Appeals will not review a claim of an erroneous instruction to the jury where no objection was made at trial

absent manifest injustice, and will look at instructions to the jury as a whole when reviewing the instructions to determine whether there was manifest injustice (GCR 1963, 516.2).

11. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—IN-SANITY—REASONABLE DOUBT.

No manifest injustice resulted from a trial court's use of the phrase "preponderance of the evidence" in an instruction to the jury on the defense of insanity, where the judge immediately defined the phrase to mean "beyond a reasonable doubt" and where the judge instructed the jury at four other points in his instruction that the prosecution must prove the defendant's sanity beyond a reasonable doubt.

Appeal from Washtenaw, William F. Ager, Jr., J. Submitted March 13, 1975, at Lansing. (Docket No. 18230.) Decided August 11, 1975.

George L. Hammack was convicted of rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel, Sr.,* Assistant Prosecuting Attorney, for the people.

Washtenaw County Public Defender (by *V. Carl Shaner,* Senior Assistant Public Defender), for defendant on appeal.

Before: DANHOF, P. J., and D. E. HOLBROOK, JR. and O'HARA,* JJ.

D. E. HOLBROOK, JR., J. Defendant was convicted by a jury on November 29, 1972, of rape, MCLA 750.520; MSA 28.788. He was sentenced to 25 to 40 years in prison. He now appeals as of right.

The defendant did not dispute the fact that a rape had been committed or that he had commit-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

ted it. In fact, defense counsel did not cross-examine the complainant. Defendant's defense was that he was insane at the time the offense was committed. His entire defense consisted of the testimony of two psychiatrists. All the issues that the defendant raises on appeal concern the trial court's handling of his insanity defense.

Defendant contends that it was prejudicial error for the trial judge to permit the prosecutor to present two rebuttal witnesses who were not indorsed on the information. Following the examination of the defense's second psychiatrist, the prosecution presented two young women. Each testified that the defendant attempted to pick her up in a manner similar to that in which he later that day successfully convinced the complainant into driving him out of a shopping center. Then at knifepoint he bound the complainant, and over the course of the next several hours, he raped her four times.

MCLA 767.40; MSA 28.980 requires the prosecutor to indorse, on the information, all known witnesses. It also imposes on the prosecutor a continuing duty to attempt to indorse all witnesses as they become known to him. This requirement has been tempered, however, and only requires the prosecutor to indorse res gestae witnesses. *People v Keywell,* 256 Mich 139; 239 NW 288 (1931), *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973). At the time of trial, MCLA 768.20; MSA 28.1043 did not require the prosecution to give defendant any notice of who its rebuttal witnesses would be when the defendant raised either an insanity or alibi defense.[1] Consequently,

---

[1] MCLA 768.20; MSA 28.1043 was amended by 1974 PA 63, effective 5/1/74, to require that the prosecution also give defendant notice of who its witnesses would be in rebuttal when the defendant raises either an insanity or alibi defense. The statute was amended to

the defendant was only entitled to notice that the prosecution intended to call these two witnesses if they were res gestae witnesses.

Thus, the first question is, were these two women res gestae witnesses? There are two basic reasons for requiring that the prosecutor indorse all res gestae witnesses. One is to allow the defendant to know who is to be called so that he may investigate and prepare for cross-examination. *People v Quick,* 58 Mich 321, 322; 25 NW 302 (1885). Two is to require that the prosecutor present the entire res gestae of the crime. *Hurd v People,* 25 Mich 405 (1872), *People v Harrison, supra.*

In the present case the two women were not witnesses to any part of the crime. They merely testified about the defendant's actions that occurred eight to nine hours before the res gestae began. Their testimony was not necessary to make out any of the elements of the crime of rape since intent is not one of the elements. *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971).

The first reason for requiring the indorsement of res gestae witnesses also implies rebuttal witnesses should be indorsed. *People v Rose,* 268 Mich 529; 256 NW 536 (1934), *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974). Because of the nature of these two women's testimony the prosecutor was not certain that he would need to call them prior to knowing the type of insanity defense that the defendant would use. In Michigan there are two prongs to the insanity defense: the traditional *M'Naghten Rule,* "whether the defendant knew what he was doing—whether it was right or

comply with the requirements to *Wardius v Oregon,* 412 US 470; 93 S Ct 2208; 37 L Ed 2d 82 (1973).

wrong"; and secondly, if he did, did he have the will power to resist the impulse occasioned. *People v Martin,* 386 Mich 407, 418; 192 NW2d 215, 220 (1971), *cert den* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342 (1972), *People v Durfee,* 62 Mich 487; 29 NW 109 (1886). If the defense psychiatrists had said that the defendant did not know right from wrong, the women's testimony would not have been material. But although the defense psychiatrists said that the defendant did know right from wrong, one of them had stated that he did not have the power to control himself. The women's testimony was relevant to show that defendant's conduct was not a sudden impulse, but a continuing course of conduct. The jury could infer that the defendant had planned the rape, since during the course of a day he made at least two other attempts to pick up women before his successful attempt.

Although the women were never formally indorsed as witnesses, the defendant received the practical benefits that he would have received if they had been formally indorsed. The decision to allow the prosecution to add witnesses to the information at any time is within the trial judge's sound discretion. MCLA 767.40; MSA 28.980. It is also true that the admissibility of rebuttal testimony rests within the sound discretion of the trial judge. *People v McGillen #1, supra* at 268. We will not disturb the trial judge's decision unless there is clear abuse shown. *People v Utter,* 217 Mich 74; 185 NW 830 (1921). In the present case, although the trial judge offered defense counsel a continuance so that he could investigate the potential testimony of these witnesses, defense counsel waived the continuance and conducted a vigorous cross-examination of the two witnesses. We cannot

say that the trial judge abused his discretion under either theory. We find no error in the admission of testimony of the rebuttal witnesses.

Defendant also argues that the trial court committed two errors concerning the admissibility of the testimony of the defendant's psychiatrists that warrant reversal. *People v Woody,* 380 Mich 332; 157 NW2d 201 (1968), specifically rejects defendant's first claim that it was error for the prosecutor to bring out, on cross-examination of a defense psychiatrist, defendant's prior criminal record. The criminal record is considered relevant if, as in this case, the psychiatrist relied on it in forming his opinion.

Defendant also argues that it was error for the trial court to refuse to admit into evidence two 1963 doctor's certificates stating that the defendant was mentally ill in 1963.[2] In denying the defense's motion to introduce the two certificates the court said: "The court is of the opinion that this would be pure hearsay, that this would cut off the right of the prosecutor to cross-examine witnesses produced by the defendant."[3] Later the court also rejected a defense effort to introduce them indirectly by striking one of the defendant's psychiatrist's reference to them.

Defendant's first proposed use of these docu-

---

[2] The Wayne County Probate Court dismissed the petition to have the defendant declared mentally ill and committed in 1963, despite the two certificates by the doctors.

[3] In *Brown v United States,* 234 F2d 140 (CA 6 1956), aff'd 356 US 148; 78 S Ct 622; 2 L Ed 2d 589 (1958), there is language imparting a constitutional right to prosecutorial confrontation; however, in that case the defendant took the stand in her own defense and then took the fifth amendment on cross-examination. Both Courts ruled that she had waived her fifth amendment right against self-incrimination when she took the stand, since to do otherwise would allow the defendant to set the perimeters of her testimony. *Brown v United States,* 356 US 148, 155–156; 78 S Ct 622, 627; 2 L Ed 2d 589, 597 (1958). The confrontation language is pure dicta.

ments is clearly hearsay. They are out-of-court statements introduced to prove the truth of the matter stated. McCormick on Evidence (2d ed), § 246, pp 584–586. One of the reasons for the hearsay rule is that it is felt that cross-examination is necessary for the trier of the fact to accurately reflect on the credibility of the witness, and in the case of experts, the basis of their opinions. In Michigan, triers of fact are free to reject the opinions of the expert witnesses. *Vial v Vial,* 369 Mich 534; 120 NW2d 249 (1963), *People v English,* 29 Mich App 36; 185 NW2d 139 (1970), *lv den* 384 Mich 823 (1971), see also *People v Martin, supra,* at 422.

On appeal defendant argues that the certificates are information on which one of the defense psychiatrists based his opinion. However, the attempt to introduce the certificates was made on direct examination, and GCR 1963, 605 provides:

"Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires. The witness may state his opinion and reasons therefor without first specifying data on which it is based, *but on cross-examination, he may be required to specify such data.* The judge, in his discretion, may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded. Testimony of expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact." (Emphasis supplied.)

The function of delving into the facts that the expert relied on to form his opinion is to test the basis, not establish the basis, for the expert's opinion. The defendant has no need to establish

the factual basis for the psychiatrist's opinion under the court rule. However, the certificates did more than just state facts, they stated conclusions. It is merely a method by which the defense attempted to get non-cross-examinable conclusions before the jury. These statements were hearsay and were properly excluded by the trial judge.

Defendant claims that the following instruction so misstated the prosecutor's burden of proof on the issue of sanity as to deprive the defendant of a fair trial.

"So, where there is any evidence in the case by the respondant which tends to show that at the time of the commission of the offense he was laboring under either permanent or temporary insanity, it then becomes the duty of the prosecution to prove the sanity of the respondant by at least a preponderance of the evidence, and unless they have done so the defendant must be acquitted, in otherwords by a fair preponderance of the evidence the people must prove that he is sane beyond a reasonable doubt."

As there was no timely objection, this Court will not review defendant's claims of an erroneous instruction, absent manifest injustice. GCR 1963, 516.2, *People v Smith,* 31 Mich App 191; 187 NW2d 490 (1971). In reviewing jury instructions for manifest injustice, this Court will look at the instructions as a whole and not only at certain portions of them. *People v Rogers,* 60 Mich App 652; 233 NW2d 8 (1975), *People v Thomas,* 7 Mich App 519; 152 NW2d 166 (1967), *lv den* 379 Mich 789 (1967). While the trial court should not have used the phrase "preponderance of the evidence", it immediately corrected the slip of the tongue by defining "preponderance of the evidence" to mean "beyond a reasonable doubt". Furthermore, the trial court instructed the jury at four other points

in the insanity instruction that the prosecution must prove the defendant's sanity "beyond a reasonable doubt". *People v Woodfork,* 47 Mich App 631; 209 NW2d 829 (1973).

Defendant also argues that the prosecutor's final argument derogating the insanity defense deprived him of a fair trial. Trial counsel failed to object at the time. We have reviewed the statement of the prosecutor sought to be reviewed and find that the issue of its appropriateness is not properly before us. Any error appearing in those statements clearly could have been rectified if an objection had been raised and a curative instruction requested. *People v McLendon,* 51 Mich App 543; 215 NW2d 742 (1974).

Affirmed.